People of the State of Illinois, Plaintiff-Appellee, v. Barney Joseph Brumbeloe, Defendant-Appellant.

Gen. No. 51,210.

First District, Second Division.

June 18, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Constantine P. Zinos and James J. Doherty, Assistant Public Defenders, of counsel), of appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John M. Goldberg, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

On the evening of April 17, 1964, Thomas Kenney was fatally stabbed during a street fight. William Michael Perkins, who inflicted the fatal wound, and the defendant, Barney Joseph Brumbeloe, were indicted for murder. At a bench trial, both Perkins and defendant were found guilty of voluntary manslaughter and sentenced to a term of two to fourteen years in the Illinois State Penitentiary. Only the defendant, Barney Brumbeloe, appeals.

Defendant urges several grounds for reversal. We deem it necessary to consider two of those points.

On April 16, 1964, the day before the killing, Thomas Kenney, the deceased, confronted defendant in a pool hall. He accused defendant of running around with his wife and also of taking money from her. Defendant denied these accusations. As defendant backed out of the pool hall, the deceased followed him with knife drawn, cursing and threatening to kill defendant.

Deceased again confronted defendant later that afternoon in a bar. The bartender testified that deceased swore at defendant at this time. He asked the defendant the whereabouts of Mike Perkins. (William Michael Perkins.) When defendant replied that he did not know, deceased stated that either Perkins or defendant had stolen money from his wife, and that he was going to kill Perkins. He then threatened defendant with an immediate fight in the alley. As deceased started toward the back door, defendant went out the front door. The deceased gave chase and lunged at him with a knife, and defendant ran into an adjacent restaurant to escape.

Perkins, having learned of the meetings between defendant and deceased and the threats made on his life, did not leave his home on the evening of April 16.

On the afternoon of April 17, 1964, deceased returned to the pool hall several times asking the whereabouts of Perkins and defendant. When asked what was wrong, the deceased replied that he was "plenty mad" at them.

While defendant was sitting in the Huddle House restaurant later that afternoon, he saw the deceased across the street. Before leaving, defendant took a butcher knife from the kitchen of the restaurant and put it in his coat.

On the evening of April 17, while defendant was in another restaurant, the deceased's wife told defendant that her husband was still looking for him. Shortly thereafter, deceased walked by the restaurant and pointed a finger at defendant. After deceased's wife left the restaurant, Perkins and his brother arrived. Defendant testified that he was afraid to walk home alone and asked the Perkins brothers to accompany him. They agreed, and the three men left together, walking down Irving Park toward Sheridan Road, Chicago.

As they reached the corner of Irving Park and Sheridan Road, the deceased ran up to the defendant with his hand in his coat, and the fight began. There is a conflict in the testimony as to who struck the first blow. Defendant, Perkins and Ronald Pratt, an eyewitness, testified that deceased hit defendant first. However, in a statement given to police on April 18, Perkins had said that defendant struck the first blow.

Defendant testified that, after he was struck by deceased, he pulled out the butcher knife and hit deceased across the face with it. As the two men wrestled to the ground, defendant dropped the knife to the sidewalk and it was subsequently picked up by Perkins. Someone pulled defendant away and, thinking it was another attacker, defendant started to fight the bystander. Deceased started to rise, and in doing so, he grabbed Perkins by the waist, and Perkins fatally stabbed him. Deceased fell to the ground, and defendant struck and choked him. Pratt and defendant testified that deceased had a knife, and Pratt also testified that it dropped to the sidewalk, after which he picked it up and took it home. In a state-

ment given to police on April 18, defendant did not mention that deceased had a knife.

It was stipulated that the cause of death was a stab wound of the heart. Deceased had also sustained two other stab wounds in the fight.

Defendant first contends that the State failed to prove beyond a reasonable doubt that the conduct of Perkins for which defendant was held accountable constituted the crime of voluntary manslaughter.

"A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this code, but his belief is unreasonable." Ill Rev Stats, c 38, § 9–2(b).

Article 7 provides that a person . . . "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." Ill Rev Stats, c 38, § 7–1.

It is the province of the trial court, sitting as the trier of fact, to settle conflicts in evidence and to determine from the facts and circumstances whether defendant acted in self-defense or, if not, whether the circumstances attending the assault were such that the death at defendant's hands constituted murder, manslaughter or justifiable homicide. People v. Washington, 27 Ill2d 104, 187 NE2d 739 (1963).

In the instant case, the trial judge found that Perkins committed the homicide under the belief that his killing was justified under the theory of self-defense, but that this belief was unreasonable. The testimony indicated that during the fight, as deceased was trying to pull himself to his feet, he grabbed Perkins around

374

the waist, and that Perkins then stabbed him fatally. This evidence was sufficient to support the trial judge's finding that Perkins' belief that deadly force was necessary to defend himself was unreasonable. We find no error in the trial judge's ruling that the acts of Perkins constituted the offense of voluntary manslaughter.

Defendant next contends that, even if Perkins' conduct in killing the deceased was unlawful, the State failed to prove defendant accountable for that conduct beyond a reasonable doubt, and that without such proof, defendant cannot be held to be guilty of the crime of voluntary manslaughter.

Sections 5–1 and 5–2(c), c 38 Ill Rev Stats (1961) are applicable to this case. Section 5–1 states:

A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself, or that of another and he is legally accountable for such conduct as provided in Section 5–2, or both.

Section 5–2(c) states:

A person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense.

■ In order to impose accountability it is not enough to show that a person's act facilitated the commission of an offense by another. Under the statute, the State must prove beyond a reasonable doubt that whatever conduct facilitated the commission of an offense by another was done with the intent that such offense be committed.

The trial judge, as trier of fact, found that there was no malice on the part of Perkins. As there was no

evidence of sudden or intense passion, the State agrees that the trial court found that Perkins committed this homicide under the belief that the use of deadly force was justified under the theory of self-defense, but that such a belief was unreasonable. Implicit in such a finding by the trial judge would be the determination that the deceased was the aggressor in the fight, and that defendant and Perkins did not start out with any intent to commit an illegal act.

Consequently, defendant's conduct, both before and during the commission of the offense, must be examined to find whether the State proved him guilty of the intent that such an offense be committed.

Defendant's conduct prior to the offense consisted of two acts: that of arming himself with a butcher knife, and requesting that the Perkins brothers walk him to his home. On the day before the killing, deceased, armed with a knife, had committed two assaults on the defendant. During one of these assaults the deceased threatened to kill him. Defendant retreated from both attacks, once by running into a nearby restaurant. On the day of the killing, a witness testified that deceased was looking for the defendant and that the defendant learned of this fact. Later that day defendant was advised by the deceased's wife that the deceased was still looking for him. Thereafter, the deceased passed by and gestured to defendant. Under these circumstances defendant had the right to reasonably believe that force would be necessary to defend himself from another attack. Filippo v. People, 224 Ill 212, 79 NE 609 (1906). Defendant's only other act prior to the offense was his request of the Perkins brothers that they walk him to his home. In view of the events which had transpired during the previous 24 hours, such a request was reasonable.

As to defendant's conduct during the affray, defendant continually attempted to avoid the deceased, but was

376

finally attacked in a place where he had a legal right to be. The deceased had his hand in his pocket as he ran up to defendant. After exchanging blows, the defendant struck the deceased across the face with the butcher knife. As the two men wrestled, the defendant discarded the butcher knife and it subsequently was picked up by Perkins. Defendant then fought with a bystander until after the deceased was slain by Perkins.

██ The elements justifying the use of force in self-defense are: 1) that force is threatened against a person; 2) that the person threatened is not the aggressor; 3) that the danger of harm is imminent; 4) that the force threatened is unlawful; 5) that the person threatened must actually believe (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and 6) that the above beliefs are reasonable. People v. Williams, 56 Ill App2d 159, 205 NE2d 749 (1965). If a defender has reasonable ground to believe himself in danger or of suffering bodily harm he may protect himself even if he is mistaken and the danger is only apparent. People v. Lockett, 85 Ill App2d 410, 229 NE2d 386 (1967).

██ Under the foregoing criteria, defendant was justified in his conduct during the affray. From the events of the previous day, including two assaults upon the defendant with a knife, the place of the attack and the position of the deceased's hand when he ran up to the defendant, there were sufficient grounds to justify the force used by the defendant, including the use of the butcher knife. Whether the deceased actually had a weapon when he ran up to the defendant is not determinative in judging the latter's conduct, for whether the danger is actual or apparent does not depend upon the assailant's use of a deadly weapon or of having one in his possession. People v. Motuzas, 352 Ill 340, 185 NE 614 (1933). Perkins' offense was his use of deadly force

at a time when the deceased was struggling to rise to his feet, and when the use of such force was unnecessary and unreasonable. Under the facts and circumstances of this case, the State failed to prove beyond a reasonable doubt that any conduct of the defendant was done with the intent that Perkins' crime be committed.

Judgment reversed.

BURKE, P. J. and LYONS, J., concur.