THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAY MARTINEZ, Defendant-Appellant.

First District (5th Division)   No. 76-232

Opinion filed May 20, 1977.—Modified on denial of rehearing June 17, 1977.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Winifred H. Date, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant was tried for murder and, in a bench trial, was found guilty of voluntary manslaughter and sentenced to not less than one nor more than 14 years. On appeal, he contends that the State failed to prove beyond a reasonable doubt that he was not acting in self-defense.

It appears that defendant and Francisco Parra had been drinking with two women in the Mona Lisa tavern. About midnight, another patron, Albert Gyland, made advances to one of the women. The record discloses a conflict in the testimony of defendant and Parra from this point. Parra, who testified for the State, said that defendant was angered by the advances and, when Gyland left the tavern, defendant followed him. Parra said that he then went out to stop an indicated altercation between them. However, when defendant testified he said that Parra had been talking to Gyland in the tavern and when he saw that Parra followed Gyland from the tavern, he went out to stop a possible fight. Outside the tavern, Parra said defendant shouted an obscenity, kicked Gyland in the leg, and then shot him. Defendant told a slightly different version; namely, that when all three were outside, Parra and Gyland began an altercation during which Parra told defendant that Gyland had a gun. According to defendant, Gyland then threatened to kill both of them and, when he displayed a gun, defendant said he was in fear of his life and drew his own revolver and fired one shot at Gyland.

After the shooting, Parra and defendant left the scene and went to another tavern, where they met Arturo Lemos. Defendant testified that he told Lemos they had been in a fight and he had fired a shot. He also said that Parra told the same story to Lemos. Parra, however, remembered no conversation while in this tavern, and he denied he told anyone that Gyland had a gun.

Lemos testified he spoke to both Parra and defendant in the tavern and

that defendant told him he had shot someone, after which Parra said, "* * * it was true because it was either their life or the other one's. Because the other one put his hand towards a gun."

Two other persons were in the vicinity of the shooting—Dennis Georges and Cal Kemper. Georges, a sheriff's supervisor, testified for the State that he saw three people near the Mona Lisa tavern who were talking loudly. Seconds later, he heard a shot and then saw three people walking towards him. He recognized defendant, who spoke to him, and then he noticed another man who staggered from the area and fell on his back. Georges saw no gun near the body of the man who fell. Cal Kemper, testifying in rebuttal for the State concerning the occurrence, said that he saw two men advancing on a third man who was walking backwards. One of the pursuers said, "If you do that again I am going to kill you." He said the two men continued to advance, and he observed the man who had spoken kick the retreating man and then shoot him.

It was stipulated that the police officers who transported Gyland to the morgue found no weapon in his possession; that Gyland's death resulted from a bullet wound; that the bullet causing the wound was fired from the revolver found in defendant's pocket by the police at the time of his arrest.

OPINION

It is the contention of defendant that the State failed to sustain its burden of proving beyond a reasonable doubt that he was not acting in self-defense.

■■ Section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 7—1) provides that "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." Justifiable use of force under this provision is an affirmative defense (Ill. Rev. Stat. 1973, ch. 38, par. 7—14), which must be raised by the pleadings or the evidence. Once raised, the State has the burden of proving defendant guilty beyond a reasonable doubt as to that issue, together with all other elements of the offense. Ill. Rev. Stat. 1973, ch. 38, par. 3—2(b).

■■ Section 3—2(a) of the Code (Ill. Rev. Stat. 1973, ch. 38, par. 3—2(a)) states that, " 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon." We believe the testimony of defendant that Gyland had threatened to kill both Parra and him and drew a gun met the requirement of "some evidence" to raise the issue of self-defense; thus, under section 3—2(b), the burden devolved upon the State to prove beyond a reasonable doubt that he was not acting

in his own defense. See *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681, *cert. denied,* 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.

■■ The essential difference then between a justified killing in self-defense and one not justified amounting to voluntary manslaughter is whether the belief that it was necessary to use deadly force was reasonable under the circumstances (*People v. Pickett* (1976), 35 Ill. App. 3d 909, 342 N.E.2d 766), and this question is to be determined by the trier of fact (*People v. Redman* (1971), 133 Ill. App. 2d 581, 273 N.E.2d 639).

■■ In the instant case, from our review of the record, we believe that the State met its burden of showing beyond a reasonable doubt that defendant was not acting in self-defense. Only defendant said that Gyland had a gun. Neither Parra nor Kemper, who witnessed the shooting, saw Gyland with a gun. No weapon was found on the person of Gyland, nor was any discovered at the scene that could be linked to Gyland here. Further, Parra denied he had told either defendant or Lemos that Gyland had a gun, and both Parra and Kemper testified that Gyland was retreating when he was shot by defendant. Under these circumstances, it appears to us that the trial court properly found that the danger to defendant was not as urgent as he testified it was and that his use of deadly force was unreasonable.

We see no merit in the argument of defendant that "Francisco Parra's incredibility, coupled with the strong inference that the deceased had in fact been armed, create a substantial self-defense issue * * *." Defendant suggests that Parra was the most damaging prosecuting witness, and he argues that his testimony should not be believed, because (1) it is in conflict in several aspects with that of defendant and Lemos, particularly as to whether Parra said that Gyland had a gun; (2) on the day before the grand jury hearing, Parra was also arrested in connection with the shooting and was held until he had testified the next day; and (3) there is nothing in the record to indicate that Parra came forward with his version of the event prior to his arrest.

This was an attack on the credibility of Parra, and it is well settled that the determination of credibility of witnesses and the weight to be accorded their testimony is for the trier of fact and, when that evidence is merely conflicting, the reviewing court will not substitute its judgment (*People v. Bolger* (1934), 359 Ill. 58, 194 N.E. 225) unless the record discloses the evidence is so unsatisfactory as to raise a reasonable doubt as to guilt (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182).

Defendant also argues that there was a strong probability that Gyland did have a gun. He points out that a man with a pistol was arrested in the Mona Lisa shortly after the shooting. It appears that the witness Georges had given a description to the police of the men in the alley, and the police later arrested the man with the gun in the Mona Lisa and defendant

draws an inference therefrom that Georges had identified him to the police as being one of the men in the alley. Defendant concludes that he "* * * had taken the weapon from the body of Albert Gyland." We note, however, that at trial Georges testified that this man was not one of those he had seen in the alley. We consider this argument also to be primarily an attack on the credibility of Georges which, as we have stated above, is for the trier of fact.

The trial court here, in finding the defendant guilty of voluntary manslaughter, concluded that it was unreasonable for defendant to believe that the circumstances justified his shooting of Gyland and, after the hearing on the motions for new trial and in arrest of judgment, which were denied, the court stated its opinion that the possession of a weapon by the victim was not established and that, although provocation for the incident may have existed, that it was not that type of provocation "* * * that would allow this individual [defendant] to shoot a man."

We are in agreement with these conclusions of the trial court, and we believe that the record supports the conviction of voluntary manslaughter.

For the reasons stated, the judgment is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.