THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROSEMARY COX, Defendant-Appellant.

Third District   No. 3—83—0021

Opinion filed January 6, 1984.

Robert Agostinelli and Jean Herigodt, both of State Appellate Defender's Officer, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Rosemary Cox, appeals following her conviction for murder in the circuit court of Will County. The defendant was sentenced to the minimum term of 20 years in the Department of Corrections.

On appeal the defendant presents the following allegations for review: (1) that the trial court erred in denying a motion to suppress following an arrest without a warrant; (2) the trial court erred by refusing to give defendant's tendered instruction regarding voluntary

manslaughter (provocation); (3) that the trial court's failure to give an elements instruction which incorporated the affirmative defense of justifiable use of force, even though not tendered by defense counsel, amounted to plain error; (4) that the defendant was not proved guilty beyond a reasonable doubt; (5) that the court should exercise its power to reduce the degree of the offense from murder to manslaughter pursuant to Supreme Court Rule 615(b)(3) (87 Ill. 2d R. 615(b)(3)).

The evidence indicates that on October 19, 1980, the 65-year-old defendant repeatedly shot and killed her 68-year-old live-in companion, Willie Hatten, with whom she had been living for three to four years prior to the shooting. However, on the day of the shooting and for a short time prior thereto, the couple had been separated. Evidence was presented that the defendant had, as early as July 1980, told the decedent's son, "I love your father and I'll kill him." The threat had been made because the decedent had not returned home the night before.

The defendant owned a .22-caliber revolver which was kept under her mattress in her apartment "for protection." No evidence was presented which indicated that the defendant normally carried the gun with her.

On October 19, 1980, the defendant went to the front yard of the decedent's home and an argument followed. The decedent was heard to have told the defendant that "he was going to kick her mother fucking ass." The defendant shot at the decedent three times, and an autopsy revealed the cause of death to be a gunshot wound to the decedent's chest. Another wound was located on the right upper arm. The decedent was intoxicated.

When the defendant arrived at the decedent's house he was with another woman. He asked her to stay in the bedroom while he answered the door. While in the bedroom, Shirley Lanier heard an argument between the decedent and the woman later identified as the defendant. She heard the woman ask the decedent why he hadn't taken her to the laundromat and why he had not come home the night before. The argument continued until gunshots were heard.

Shortly after the shooting, the defendant was arrested in her home without a warrant. The defendant was advised of her *Miranda* rights and elected to talk to the police. The defendant told them that she had waited for the decedent to return home to take her to the laundromat. When he failed to show up the defendant walked to the decedent's house. Upon hearing a woman's voice coming from inside the house, the defendant knocked on the door but stood away from

the window so the decedent couldn't see her. When the decedent failed to open the door the defendant broke the latch and entered the house. The decedent came out of the bedroom in his shorts. The defendant told him that she would not hurt the woman and asked him to bring her out of the bedroom. An argument followed which ended in the defendant shooting and killing Hatten.

The defendant's first argument on appeal concerns the refusal of the trial court to suppress her statements to the police following her arrest. Specifically, the defendant contends her arrest was illegal because it occurred without either a warrant or under exigent circumstances. She does not contend that the police did not have probable cause to arrest her, however.

■■ While the defendant is correct in that the warrantless and nonconsensual entry into a suspect's home to make an arrest absent exigent circumstances is prohibited by the fourth amendment (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371), where the police have probable cause to arrest a defendant, they may make a warrantless arrest at the entrance to a defendant's home after the defendant voluntarily opens the door in response to the police knocking on the door (*People v. Schreiber* (1982), 104 Ill. App. 3d 618, 432 N.E.2d 1316, *cert. denied* (1983), 459 U.S. 1214, 75 L. Ed. 2d 452, 103 S. Ct. 1214; *People v. Krohn* (1981), 100 Ill. App. 3d 37, 426 N.E.2d 540).

■■ The evidence taken at the suppression hearing indicated that the defendant voluntarily admitted the police to her home. We believe that based upon the evidence the trial court properly denied defendant's motion to suppress.

Next the defendant contends that the trial court erred in refusing to give a tendered instruction regarding voluntary manslaughter (provocation).

■■ During the trial, the defense argued that the defendant shot the decedent in self-defense. Based on such evidence, the jury was properly instructed on self-defense and voluntary manslaughter based on the unreasonable belief that the defendant's use of force was justified.

■■ ■ Serious provocation recognized as sufficient to require an instruction for voluntary manslaughter based on provocation includes physical injury or assault, mutual quarrel or combat, illegal arrest and adultery with the offender's spouse. Mere words or gestures are *not* adequate to mandate the instruction. (*People v. Fausz* (1983), 95 Ill. 2d 535, 449 N.E.2d 78; *People v. Baggett* (1983), 115 Ill. App. 3d 924, 450 N.E.2d 913.) While the trial court may believe there is sufficient

evidence to support a self-defense instruction and a voluntary manslaughter instruction based upon an unreasonable belief that force was necessary, it does not follow that a voluntary manslaughter instruction based upon provocation must also be given. (*People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378.) While acts of passion or a sudden desire for revenge may indicate a state of mind which would entitle a defendant to a voluntary manslaughter instruction based on provocation, if the defendant's actions were merely defensive or motivated by fear and a desire to escape the victim, it has been held proper to refuse a voluntary manslaughter instruction based on provocation. *People v. Slaughter* (1980), 84 Ill. App. 3d 1103, 405 N.E.2d 1295.

██ The critical question is whether the decedent's conduct reached a level of serious provocation which permits the killing to be reduced to manslaughter. The provocation must be sufficient to excite an intense passion in a reasonable person. The test is objective, not subjective. (*People v. Neal* (1983), 112 Ill. App. 3d 964, 446 N.E.2d 270.) One who initiates combat and then relies on the dispute to mitigate his offense from murder to manslaughter is not entitled to the instruction. *People v. Causey* (1978), 66 Ill. App. 3d 12, 383 N.E.2d 234.

██ We believe the evidence was overwhelming that the defendant, not the decedent, was the aggressor and under such circumstances the trial court properly refused defendant's tendered instruction on provocation. *People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373.

Next the defendant claims that the failure of the trial court to give an issues instruction which included as an element the unjustifiable use of force amounts to plain error.

██ Our review of the record indicates that the jury was adequately instructed on the issue of self-defense, murder and voluntary manslaughter and the People's duty to prove the defendant guilty beyond a reasonable doubt. The failure to include the proposition that the People had to prove that the defendant's actions in shooting the decedent were without legal justification, while erroneous, did not amount to plain error under the circumstances of this case where the defendant did not object to the issues instruction given nor tender the proper issues instruction. Additionally, we believe there was no plain error here because the instructions given, in combination with the closing arguments of both attorneys, apprised the jury that the State had the burden of proving that the defendant was not justified in the force which she used. We also note that this case is not closely con-

troverted on the facts and that fundamental fairness does not therefore require a reversal and remand for a new trial. See *People v. Huckstead* (1982), 91 Ill. App. 3d 536, 440 N.E.2d 1248.

Next the defendant contends that she was not proved guilty beyond a reasonable doubt.

It is well settled that a jury's determination of guilt should not be overturned unless the evidence is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt. (*People v. Ware* (1981), 96 Ill. App. 3d 923, 422 N.E.2d 148.) A defendant's exculpatory testimony does not have to be believed by the trier of fact, the judge of the credibility of the witnesses. (*People v. Tirrell* (1980), 87 Ill. App. 3d 511, 408 N.E.2d 1202.) The deterioration of the relationship between the decedent and the defendant, the extent to which the behavior initiated the confrontation and her lack of effort to retreat or withdraw from the altercation, together with the nature of the decedent's conduct (verbal as opposed to physical), all support the jury's rejection of the defendant's claim of self-defense. The defendant is 5 feet 3 inches and weighs 210 pounds. The decedent was 5 feet 4 inches and weighed only 160 pounds. (*People v. Rosas* (1977), 52 Ill. App. 3d 555, 367 N.E.2d 986.) In addition, defendant's flight from the scene and her attempt to dispose of the weapon used in the shooting clearly evidence her consciousness of guilt. *People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044.

Without restating the facts, it is clear from the evidence that the defendant planned to go to the decedent's house, she deliberately carried a gun with her, broke into the decedent's house, confronted her estranged man and repeatedly shot him, thereby causing his death. There was additional evidence that the idea of killing the decedent had been on the defendant's mind for some time.

The foregoing scenario tragically but clearly supports the defendant's conviction and sentence for murder.

We cannot, as defendant argues, reduce the degree of the offense committed out of mere "merciful benevolence." (87 Ill. 2d R. 615(b)(3); *People v. Mau* (1980), 88 Ill. App. 3d 924, 411 N.E.2d 323.) While it is true that the minimum penalty for murder is harsh, the crime committed was equally, if not more, harsh. A life was taken deliberately and without cause, except perhaps jealousy. The decedent did not die as a result of and during a jealous rage, however. The evidence indicates that the thought of killing the decedent was no stranger to the defendant's mind. The defendant had been left alone before and she resolved that she would not be left alone again. The eternal triangle, not unlike the ageless ballad of Frankie and Johnny, appears

to have claimed yet another victim from the ranks of our occasionally all too-violent society.

For the foregoing reasons, the judgment and sentence of the circuit court of Will County is affirmed.

Affirmed.

STOUDER, P.J., and BARRY, J., concur.