THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDDIE PETERSON, Defendant-Appellant.
First District (1st Division) No. 1—85—2487

Opinion filed March 26, 1990.—Rehearing denied September 6, 1990.—
Modified opinion filed September 17, 1990.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Jeffrey Newman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, the defendant, Eddie Peterson, was convicted of the murder of Ernest Hardaway and was sentenced to 25 years' imprisonment. The defendant then appealed his conviction and sentence to this court. This court affirms.

At the defendant's trial, the State presented Douglas Matthews as its first witness. Matthews testified that on September 22, 1983, he was arrested along with the defendant, Ernest Hardaway and David Clay, for the armed robbery of a gas station in St. Johns, Indiana. Matthews also said that he was at the defendant's house on October 24, 1983, but could not recall the conversation that he had with the defendant. When Matthews continued to claim that he could not recall his October 24 conversation with the defendant, the State and defense counsel agreed to read Matthews' grand jury testimony from October 28, 1983, into the record.

Matthews testified before the grand jury that on October 24, 1983, he was at the defendant's house. The defendant told Matthews that Hardaway had threatened him and his family. Hardaway had asked the defendant to kill the gas station attendant from the Indiana robbery, along with David Clay, who had agreed to testify for the State, so that there would be no eyewitnesses to the robbery, but the defendant had refused to do so. The defendant also told Matthews that Hardaway had been in his home and had pulled a gun on him, but left without harming him because the defendant's sister was home. Matthews testified that the defendant said that if Hardaway's threats continued, he would have to put Hardaway away eventually. Matthews explained that the defendant meant he would have to kill Hardaway. Matthews claimed that the defendant had called his attorney and told the attorney about Hardaway's threats. The attorney told the defendant he would look into the situation, but the defendant never heard back from him.

Matthews then told the grand jury that on October 26, 1983, the defendant telephoned him and told him to come over. The defendant sounded nervous and, when Matthews arrived at the defendant's house, the defendant told him that he had just killed Hardaway. The defendant explained that Hardaway had telephoned him that evening and asked the defendant to pick him up. Hardaway told the defendant that he wanted to go to Altgeld Gardens, a housing project, to steal

money from some "dope" houses for his next court date. As the men were walking around Altgeld Gardens, Hardaway turned around and looked at the defendant. Hardaway "had his gun out, *** away from his body," so the defendant fired his .45 caliber automatic at Hardaway several times.

On cross-examination, defense counsel asked Matthews if he had ever seen Hardaway pull a gun on the defendant before. In response, Matthews said that on the day of the gas station robbery, Hardaway pulled his gun out when the defendant was driving and laid the gun in his lap, pointed toward the defendant.

Georgia Buglass, an assistant State's Attorney, was the State's next witness. Buglass said that on October 27, 1983, she was assigned to the felony review unit of the State's Attorney's office and was called to the violent crimes division of the Chicago police department. At the police department, Buglass met with the defendant and gave him his *Miranda* warnings. After the defendant received his *Miranda* warnings, he told Buglass that he wanted to talk to her about Hardaway's death. Buglass said that she wrote down the defendant's statement and, when he was finished talking, read it back to him. After the defendant made some changes on the statement, he signed it.

In his statement, the defendant said that on October 26, 1983, he and Hardaway went to Altgeld Gardens to commit an armed robbery because they both needed money. Both men carried guns in their jacket pockets. The defendant followed Hardaway as they were walking around an apartment building. As they were walking, the defendant saw Hardaway take his gun out. The defendant said, "[w]hen [Hardaway] took his gun out, I could see the shadow of his gun, and it was point [sic] in the direction that I was coming, because I could see the shadow of him and the gun before I walked around the corner of the building." The defendant told Buglass that he then pulled his gun out, pushed Hardaway's arm to the side so that Hardaway's gun was not pointed at him, and then fired several shots at Hardaway. Next, the defendant ran to his car and drove off, stopping so that he could throw his gun into the Calumet River. The defendant said that Hardaway did not say anything to him either before or after he saw the shadow of Hardaway's gun. Finally, Buglass testified that the defendant never said that Hardaway had threatened him or had pointed a gun at him.

Hardaway's girlfriend, Pamela Reed, testified next. Reed said that on October 26, 1983, around 9 p.m., she was at home with Hardaway when the defendant telephoned and asked to speak with Hardaway. When Hardaway hung up the telephone, he told Reed that he and the defendant were going to go to Altgeld Gardens "to stick up a coke

house." Hardaway then left with the defendant, and Reed never saw him alive again.

Officer Michael McDermott testified and said that on October 26, 1983, he received a report that a man had been shot in Altgeld Gardens. McDermott found a .22 caliber revolver near Hardaway's body, as well as gun casings from a .45 caliber automatic. McDermott learned that the other officers on the scene had handled the .22, so he also inspected it. McDermott observed five live rounds in the .22 and concluded, based on his inspection of the weapon, that it had not been fired because there was no gunshot residue around the gun barrel and there was no scent of gunpowder on the gun.

Albert Wolf, a detective with the Chicago police department, also testified. Wolf stated that he interviewed the defendant on October 27, 1983. Wolf confronted the defendant with some inconsistencies in his story, specifically, that he had told another officer he had not seen Hardaway for two months and that he was at home at the time of Hardaway's murder. The defendant then admitted to Wolf that he shot Hardaway. The defendant told Wolf that Hardaway had telephoned him on October 26 and asked him for a ride to Altgeld Gardens because he had to pick up a package. Around 9 p.m., the defendant picked Hardaway up and drove him to Altgeld Gardens. When they arrived at Altgeld Gardens, Hardaway got out of the car. The defendant waited in the car for approximately 10 minutes. Hardaway then came back to the car and told the defendant to come with him. The defendant got out of the car and followed Hardaway. The defendant told Wolf that Hardaway had his hand in his pocket and, after they had walked a short distance, Hardaway stopped, turned and pulled his hand up. The defendant claimed that he knew Hardaway had a gun and knew what Hardaway was going to do. When Hardaway's gun got caught in his jacket, the defendant pulled out his .45 automatic and shot at Hardaway until his gun was empty. The defendant then ran back to his car and drove away. On his way home, the defendant stopped and threw his gun into the Calumet River.

Wolf next testified that the defendant never said that Hardaway had threatened him. The defendant also never mentioned seeing a gun or a shadow of a gun on Hardaway. On cross-examination, Wolf said that the defendant claimed he had shot Hardaway in self-defense. Wolf further explained that even though the defendant never mentioned that he had seen a gun on Hardaway, the defendant did tell Wolf that he knew Hardaway had a gun.

Following Wolf's testimony, the State and the defense stipulated that five expended .45 caliber automatic bullets and one metal frag-

ment were recovered from Hardaway's body. The parties also stipulated that when the defendant was picked up for questioning on October 27, 1983, he told police officer Dennis McGuire that he had not seen Hardaway for two months and, on the night of the murder, that he had stayed home watching television with "Tony" for the entire evening. Finally, the parties stipulated to the coroner's report which showed, among its findings, that Hardaway had suffered a bullet wound to the right lower back and to the back of the neck. The State rested its case following the stipulations. The defense then moved for a directed finding of not guilty, which the trial court denied. The defense then also rested.

The trial court, in finding the defendant guilty, stated that even though some evidence of self-defense had been raised, the evidence was insufficient to create a reasonable doubt when considered in light of the other facts and circumstances of the case. The court noted that the defendant gave four different statements concerning what had happened, and all the statements were inconsistent with one another, as well as with the other evidence in the case. Further, none of the statements mentioned any prior threats by Hardaway. The court stated that the firing of five bullets was inconsistent with a claim of self-defense. In addition, the court found the fact that two of the bullets entered in the back of the neck and the lower back to be inconsistent with self-defense.

Next, the court denied the defendant's post-trial motions. In sentencing the defendant, the court said that it was appropriate for it to take into account the pending armed robbery charges in Indiana, even though there had been no finding on those charges at the time. The State requested a sentence of 35 years. The court, however, sentenced the defendant to 25 years' imprisonment.

On appeal, the defendant first contends that the State failed to rebut his claim that he killed Hardaway in self-defense. First, the defendant argues that this court must disregard his statement to Officer McGuire that he had not seen Hardaway for two months and that he was home on the night of Hardaway's murder because that statement was made when the defendant was afraid of admitting what he had done. Further, the defendant contends that his claim that he had acted in self-defense was corroborated, because a gun was found next to Hardaway's body which was not the murder weapon. The defendant then alleges that he reasonably believed that his life was in danger when he shot Hardaway, because Hardaway had previously threatened him.

In response to the trial court's findings, the defendant argues: the number of shots fired does not rebut his self-defense claim because he

was firing an automatic weapon; the bullet wounds to Hardaway's back and the back of his neck do not prove that the defendant shot Hardaway as he was walking away; the defendant's flight from the crime scene does not establish his guilt since he told Matthews about the crime when he arrived home; the fact that the defendant picked Hardaway up at home does not disprove self-defense because the defendant may have picked Hardaway up out of fear of what Hardaway would do if he refused; the three statements that the defendant gave concerning the shooting were not inconsistent because they all mentioned that Hardaway had a gun; and the fact that the defendant did not state that he was afraid of Hardaway does not negate his self-defense claim because he was not required to verbalize his fear.

The State contends that the evidence clearly established the defendant's guilt beyond a reasonable doubt. The State maintains that the defendant was entitled to use deadly force only if he reasonably believed that Hardaway would kill or seriously injure him, and the trial court's finding on the issue of self-defense should not be reversed unless the State's evidence was so improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. In support of its argument, the State notes that: several days before the killing, the defendant told Matthews that he would kill Hardaway if Hardaway continued to threaten him; the defendant called Hardaway and picked him up at home so they could commit an armed robbery of a "dope" house; the defendant shot five bullets, two of which entered the back of Hardaway's neck and his lower back; the defendant ran from the crime scene and disposed of his weapon; and the defendant gave four different accounts of the events on the night of the murder. The State also contends that none of the elements justifying the use of deadly force were present in this case because there was no evidence that the defendant was in danger of imminent harm, there was no evidence that Hardaway was the aggressor here and there was no evidence that the defendant reasonably believed that the use of force was necessary to avert the danger against him.

 The Illinois Criminal Code of 1961 provides that "[a] person is justified in the use of force against another \*\*\* which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself." (Ill. Rev. Stat. 1987, ch. 38, par. 7—1.) If a defendant raises a defense of self-defense, the State then has the burden of proving, beyond a reasonable doubt, that the defendant's use of force was not justified. (*People v. Price* (1987), 158 Ill. App. 3d 921, 926, 511 N.E.2d 958, 961; *People v. Lenzi* (1976), 41 Ill. App. 3d 825,

826, 355 N.E.2d 153, 155.) Whether a defendant's use of force was justified is a question of fact for the trier of fact to decide; therefore, the trial court's verdict should not be set aside unless the evidence presented by the State was so improbable, impossible or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*Price*, 158 Ill. App. 3d at 926, 511 N.E.2d at 961; *People v. Cox* (1984), 121 Ill. App. 3d 118, 123, 459 N.E.2d 269, 272; *People v. Martinez* (1977), 49 Ill. App. 3d 345, 348, 364 N.E.2d 346, 349.) Further, a trier of fact need not believe the defendant's version of events, even if it is the only version, but instead "may consider other facts and circumstances in the record which tend to contradict defendant's story or at least raise serious questions about its probability." *Price*, 158 Ill. App. 3d at 926-27, 511 N.E.2d at 961.

■■ ■ Although some evidence was raised in support of the defendant's claim that he acted in self-defense, this court finds that the State proved beyond a reasonable doubt that the defendant's use of force was not justified. In order to justify the use of deadly force, the evidence must show that unlawful force was threatened against a defendant, he believed the danger of harm was imminent, he was not the aggressor, force was necessary to avert the danger threatened against him, and the amount of force used was necessary. (*Lenzi*, 41 Ill. App. 3d at 834-35, 355 N.E.2d at 162; *People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 377, 240 N.E.2d 150, 154.) The evidence presented by the State proved beyond a reasonable doubt that none of the foregoing factors were present in this case.

The defendant gave four contradictory accounts of his activities on the night of Hardaway's murder. The very fact that the defendant gave contradictory accounts detracts from his credibility. (*Price*, 158 Ill. App. 3d at 927, 511 N.E.2d at 962.) Further, none of the defendant's stories established that Hardaway had threatened him with imminent harm or that Hardaway was the aggressor. In fact, when Hardaway allegedly pulled his gun out, he never said anything to the defendant, and it was not clear whether Hardaway actually aimed his gun at the defendant. The only threats that Hardaway allegedly made to the defendant had occurred several days earlier and, despite the threats, the defendant was left unharmed. The fact that Hardaway was holding a gun does not, in itself, prove that Hardaway was the aggressor, since Hardaway was at Altgeld Gardens to commit an armed robbery. Further, the defendant willingly picked Hardaway up at home so they could commit another armed robbery. Based on a review of the record in this case, this court cannot conclude that the evidence was so improbable, impossible or unsatisfactory as to raise a rea-

sonable doubt of the defendant's guilt.

The defendant next contends that this court should reduce the degree of his crime to voluntary manslaughter and remand for resentencing. The defendant argues that even if this court finds his belief that he was acting in self-defense to be unreasonable, this court should find him guilty only of voluntary manslaughter because he subjectively believed that his use of force was justified. In response, the State argues that the defendant's conviction for murder should stand. The State contends that it was unnecessary for the trial court to address the reasonability of the defendant's belief that he was acting in self-defense since the trial court found that the defendant did not believe that Hardaway would kill or seriously injure him.

■■■ A voluntary manslaughter conviction is proper if the trier of fact concludes that the defendant actually believed that force was necessary to prevent imminent death or great bodily harm, even though that belief was unreasonable. (*Price*, 158 Ill. App. 3d at 927-28, 511 N.E.2d at 962; see also *People v. O'Neal* (1984), 104 Ill. 2d 399, 405-06, 472 N.E.2d 441, 443; *People v. Johnson* (1972), 4 Ill. App. 3d 249, 251-52, 280 N.E.2d 764, 766; *Brumbeloe*, 97 Ill. App. 2d at 374, 240 N.E.2d at 153.) If, however, the trier of fact concludes that a defendant had no such belief, the defendant should be found guilty of murder. (*Price*, 158 Ill. App. 3d at 928, 511 N.E.2d at 962.) It is in the province of the trier of fact to assess the credibility of the witnesses and determine the weight to be given their testimony. *Price*, 158 Ill. App. 3d at 927, 511 N.E.2d at 962.

■ The trial court in the present case found the defendant guilty of murder, concluding that the defendant did not, even subjectively and unreasonably, believe that he was justified in killing Hardaway. The record in this case supports the trial court's conclusion that the defendant did not believe that Hardaway was threatening him with imminent death or great bodily harm. Accordingly, this court will not reduce the degree of the offense on appeal.

In his last issue on appeal, the defendant argues that his sentence should be reduced because the trial court impermissibly considered unreliable information at sentencing, namely, that the defendant had armed robbery charges pending against him in Indiana. The defendant claims that this information was improperly considered by the court because the court did not know the facts underlying the Indiana charges. According to the defendant, since the trial court improperly relied on this information in sentencing him, his sentence should be reduced.

The State, on the other hand, alleges that the trial court properly

sentenced the defendant to 25 years' imprisonment. The State maintains that the trial court considered the Indiana robbery as a motive for the Hardaway murder and as part of the transaction leading to murder. The State then notes that a trial court's sentence should not be disturbed absent an abuse of discretion. Because the defendant's sentence here was within the minimum and maximum sentences for murder, the State contends that the trial court did not abuse its discretion in sentencing the defendant.

The imposition of a sentence is a matter of judicial discretion and, absent an abuse of that discretion, the trial court's sentence may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883; *People v. Martin* (1983), 112 Ill. App. 3d 486, 502, 445 N.E.2d 795, 808; see also *People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344, 348.) The trial court is in a better position to determine the proper punishment to be imposed based upon the particular facts and circumstances of the case. *Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884; *Martin*, 112 Ill. App. 3d at 502, 445 N.E.2d at 808.

Here, the defendant claims that the trial court did abuse its discretion in sentencing him because it considered the pending robbery charges. Although it is true that bare arrests and pending charges may not be used in aggravation of a sentence (*People v. Wallace* (1986), 145 Ill. App. 3d 247, 255, 495 N.E.2d 665, 670; *People v. Shumate* (1981), 94 Ill. App. 3d 478, 488, 419 N.E.2d 36, 44; *People v. Perry* (1976), 38 Ill. App. 3d 81, 85, 347 N.E.2d 340, 344), this court has held that merely because a trial court has knowledge of other arrests before imposing sentence does not amount to reversible error, because the trial court is presumed to have recognized and disregarded incompetent evidence unless the record reveals the contrary (*Shumate*, 94 Ill. App. 3d at 488, 419 N.E.2d at 44). Moreover, the trial court, in imposing sentence, is not limited in its consideration to information which would be admissible during trial, but may look to the facts of the crime and other facts which might mitigate or aggravate the offense. *People v. Adkins* (1968), 41 Ill. 2d 297, 300-01, 242 N.E.2d 258, 260.

While there is evidence in the record that the trial judge mentioned the pending Indiana charges during the sentencing hearing, we do not construe those comments to mean that he considered the pending case in Indiana in aggravation. Rather, as noted by the State, we construe his comment as considering the evidence that was adduced at trial, which prominently included the facts regarding the Indiana case. He considered the Indiana armed robbery as motive and as part of the entire chain of events leading to Hardaway's murder. Fur-

ther, since the minimum sentence in this case was 20 years' and the maximum was 60 years' imprisonment (see Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)), this court cannot conclude that the defendant's sentence of 25 years was an abuse of discretion.

Accordingly, for all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed. Furthermore, pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, and *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, we grant the State's request that the defendant be assessed $75 as costs for the State's defending this appeal and incorporate it as part of our judgment.

Judgment affirmed.

O'CONNOR and MANNING, JJ., concur.