(No. 21778.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STANLEY MOTUZAS, Plaintiff in Error.

*Opinion filed April 22, 1933.*

FRANCIS HEISLER, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Stanley Motuzas, the defendant, was indicted and tried without a jury in the criminal court of Cook county for the murder of Louis Smanda, by shooting. The indictment consisted of but one count. The defendant was found guilty of murder and sentenced to the penitentiary for fourteen years. Motions for a new trial and in arrest of judgment were denied, and the case comes here by writ of error.

At the time of the shooting, February 25, 1932, the defendant was eighteen years of age and lived with his parents at 4437 South Wood street, in Chicago. Smanda was also eighteen and lived in the same neighborhood. On this day the defendant was playing tag with some neighborhood boys on the street, a few doors from his home. While so engaged he saw Walter Kestian, of about his own age and with whom he had had some trouble, pass by in an automobile. Upon seeing Kestian the defendant went home and procured a revolver from under the mattress of his bed.

After loading the weapon and placing it in a vest pocket he returned to the street and resumed his play. Between 9:00 and 9:30 that evening, while the defendant was resting from his play, Kestian, Albert Lucostic and Smanda appeared, coming toward the place where the defendant was standing. Lucostic stopped and began talking with John Klise, who was passing. Kestian and Smanda continued on toward the defendant, who ran up an outside flight of stairs to a doorway. Smanda chased the defendant up the stairs and was shot as the defendant reached the doorway, the door of which he could not open. After the shooting the defendant left the scene and was apprehended later at the home of a relative. He admitted the shooting but insisted that the act was committed in self-defense and only after he had sought to avoid trouble by attempting to get inside of the building ahead of his assailant. He further contends that the State failed to prove the necessary element of malice required to sustain a conviction for the offense charged.

Kestian was a witness for the State and admitted upon the stand that he had difficulty with the defendant about three weeks before the shooting. Lucostic, another State witness, admitted that he and Kestian had fought the defendant and a companion a short time before the shooting. Lucostic stated that he was walking south in the block, approaching the defendant, when he joined John Klise, who was passing. The witness and Klise followed behind Kestian and Smanda at a distance of about fifty feet. He heard two shots, but did not hear any words pass between the defendant and Smanda before the shots. Klise, as a witness for the State, told of meeting Lucostic after the witness had passed the defendant. Klise said that after conversing a few moments with Lucostic he heard two shots back of them, and Smanda said, "They got me." Klise said that he did not hear any loud talking or swearing just before the shooting. He saw the defendant at the top of the

stairs but did not know how he got there, as his attention was not drawn to him until the shots were fired.

As is not uncommon in such cases, the stories of the defendant and his witnesses differed quite materially from . the testimony of the State's witnesses. The defendant testified that while playing tag he saw Kestian pass by in an automobile with some companions. In the preceding month he had been attacked by Kestian and two other youths, and a few days after this encounter he related that he had a "square" fight with Kestian. Therefore, upon seeing Kestian go by, he went to his room, secured his revolver, loaded it and brought it back with him to the street, rejoining his companions, Paul Raikauskas, Charles Stanisauska and Joseph Janusauskas, at the foot of the flight of steps. The defendant stated that Kestian and Smanda emerged from an alleyway between two of the houses, Kestian pointing out the defendant to Smanda, saying, "There he is." Then the defendant fled up the steps, pursued by Smanda, while Kestian remained below. The defendant said he ran because he saw some object in Smanda's right hand which flashed, the fist being closed and extended forward. Reaching the top of the steps the defendant said he tried to open the door but could not. He then took his gun from his pocket and shot Smanda, who was, as the defendant stated, "almost on top of me." Smanda and the defendant were not acquainted although the defendant knew who Smanda was. He said he first noticed Smanda when the latter was four feet away and running toward him. Denying any specific intent to kill anyone with the gun, the defendant said that he had procured it from his room only with the purpose in mind of "playing safe," and was paralyzed with fear at the time of and immediately following the shooting.

Paul Raikauskas, a defense witness, said that he was the first one to see Smanda. Charles Stanisauskas ran into the witness, causing him to turn around, and he then saw Kestian and heard him shout, "There he is! That is him!"

This witness said that Kestian came from the rear of the houses in the company of three other boys; that the defendant, followed by Smanda, ran up the steps leading to the doorway and tried to get in the door; that while he was doing this Kestian started to shout; that this shouting attracted the attention of the witness to Kestian so that he did not see the shooting of Smanda. He also testified that Smanda had a cigar in his right hand which he transferred to his mouth, and that when Smanda put his right hand on the stair banister to go up after the defendant the witness saw a black object in the right hand of Smanda. This object, according to the witness, was about four inches long.

Charles Stanisauskas said that he was standing talking with the defendant just before the shooting. This witness said that Kestian, Smanda and two others came from an alleyway between two of the houses. As they did so, two of them said, "There he is," and Kestian and Smanda started running toward the defendant, who ran up the stairs. The witness then left and saw no more.

Joseph Janusauskas related how he had seen Kestian and Smanda come out of the alleyway on the run; that he heard someone shout, "There he is," whereupon Smanda started running after the defendant, who retreated up the stairs with Smanda in close pursuit. The witness then left the scene and saw nothing further.

Edward Ducak testified that he saw Smanda and another boy come out of the alleyway and that two other boys were talking farther north, by the saloon. At this time the witness was across the street from the group of boys. He stated that Smanda had some object in his hand when he emerged from the alleyway; that the defendant was at the foot of the steps and ran up them to the doorway, followed by Smanda; that upon failing to open the door the defendant fired the shots at Smanda and then ran away. This witness told of Smanda having a cigar, which he put in his pocket as he traveled up the stairs. It was at

this time the witness saw an object in the hand of Smanda. This object, he said, was about as big as the palm of the hand. According to Ducak, Smanda had only mounted four or five steps when he was shot by the defendant.

The evidence overwhelmingly indicates that immediately after Smanda saw the defendant he took after him, without the interchange of words between them. The defendant also showed by his quick retreat that he considered Smanda an enemy. His testimony indicates that when he saw Kestian in the automobile he believed he would be concerned in some trouble, and that the trouble-maker would be Kestian or some of his clique. We must accept the statements of the witnesses who were close by and observed the approach of Kestian and Smanda from the alleyway and heard the former identify the defendant for the information of Smanda. This action is conclusive to this court that there was an arranged concert of action between Kestian and Smanda. For that reason we cannot give great weight to Kestian's story as a witness for the State, except as to those particulars substantiated by other credible evidence.

Express malice is the deliberate intention to take the life of another, which is manifested by circumstances capable of proof. (*People* v. *Crenshaw,* 298 Ill. 412.) Malice aforethought will be implied from an unprovoked, murderous assault from which death results. (*Koser* v. *People,* 224 Ill. 201.) A wanton or reckless act will raise the presumption of malice. (*Dunaway* v. *People,* 110 Ill. 333.) In the application of the above rules to the present situation we are confronted with the fact that the defendant was in the full exercise of his lawful right to be upon a public street. True it is that he anticipated trouble and took such precautionary measures as he thought needful to protect himself if attacked. Great weight might attach to this precautionary act of the defendant in arming himself if he, upon seeing Kestian and Smanda, had been the aggressor.

The evidence, however, is clear that he did just the contrary—that he endeavored to escape from his assailant. His first action was not to make use of the gun, his precautionary measure of defense. It was to seek safety in flight. Under the particular facts of this case we cannot see how the State has proved the existence of the element of malice, express or implied, which is necessary before the charge of murder can be established. The fact that the defendant chose a wrong direction for his flight cannot enter into the discussion. The law does not charge an individual, when he has reasonable grounds to believe himself in apparent danger of losing his life or suffering great bodily injury, to use infallible judgment. It would be unreasonable to require such an exercise of careful judgment in the space of a few seconds while one under great stress and excitement was being pursued by another, apparently bent on doing him great bodily harm.

An intent to kill will not necessarily constitute an intent to murder. One may intentionally kill in self-defense and not be guilty of murder. (*Hammond* v. *People*, 199 Ill. 173; *People* v. *Penman*, 271 id. 82.) Acting in self-defense, one who is deliberately assaulted in a manner to make him reasonably apprehensive that his life may be taken or that he will suffer great bodily harm has the right, under the law, to deliberately kill his assailant if it reasonably appeared that such act was necessary, or apparently so, in order to save himself from great bodily harm. (*People* v. *Casino*, 295 Ill. 204.) It is not necessary that the deceased should have used against his slayer a deadly weapon to justify a killing in self-defense. If the slayer was confronted with such means or force as to induce a reasonable apprehension that he was in danger of loss of life or of suffering great bodily harm, that is all the law requires in order to justify the killing. *People* v. *Organ*, 345 Ill. 339.

It appears from the evidence that the defendant apprehended that he would have trouble with Kestian and his

companions when he saw them pass in the automobile. Motivated by this apprehension he armed himself. That his fears were well founded is borne out by the appearance of Kestian and three companions a few minutes afterwards. The greater weight of the evidence leads us to conclude that Kestian identified the defendant. Upon that identification being made, Smanda, a companion of Kestian and not an acquaintance of the defendant, made the assault. A reasonable belief to be reached from these actions is that they were the result of a previously determined program between Kestian and Smanda. The defendant, under the circumstances, was warranted in standing his ground. Instead he endeavored to flee from the assailant and not engage him. Finding his avenue of flight blocked, and being hotly pursued, we can only say that he acted upon a reasonable apprehension that he was, at the least, in danger of suffering great bodily harm. The attacker, according to the evidence, held in his right hand an object which one under the circumstances could reasonably conclude to be a weapon. The fact that the authorities did not find any weapon upon the person of the deceased or near his person does not alter the situation, as we held in *People* v. *Organ, supra,* that "it is not necessary that the danger be real or that the assailant be actually armed with any weapon. A person pursued or assaulted in such a way as to induce in him a reasonable and well-founded belief that he is actually in danger of losing his life or receiving great bodily harm, will, under the influence of such apprehension, be justified in defending himself whether the danger is real or only apparent." In our opinion the killing of Smanda by defendant was a justifiable act of self-defense, and the trial court, under the evidence, should have entered a judgment finding defendant not guilty of murder.

The judgment of the criminal court of Cook county is accordingly reversed.

*Judgment reversed.*