(No. 43815.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. WALTER SPEED, JR., Appellant.

*Opinion filed May 22, 1972.*

PATRICK A TUITE, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and GEORGE PAPPAS, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Walter Speed, Jr., was indicted in the circuit court of Cook County for the offense of murder. The State offered and the court submitted a voluntary manslaughter verdict to the jury, over the objection of the defendant. The jury returned a verdict finding the defendant guilty of voluntary manslaughter, and he was sentenced to a term of from four to eight years in the Illinois State Penitentiary.

The defendant was accused of unlawfully shooting and killing Harrison Jackson in an automobile service station operated by Jackson in the city of Chicago. Two brothers were the only occurrence witnesses who testified for the State. Sam Cannon, one of the witnesses, testified that he had been working on a car at the service station when a dice game began at about 2:00 P.M.; that four or five men, including Jackson, the defendant, and the witness, participated in the game; and that Jackson was losing money and the defendant and the witness were winning when Jackson left the game at about 7:00 P.M. to take a lady home.

The witness further testified that when Jackson returned, the game continued, and Jackson began winning the defendant's money; that the defendant then left the game, but returned shortly with more money; that, as Jackson continued to win the defendant's money, an argument began over $10 which Jackson picked up but which the defendant claimed was rightfully his; and that when the defendant asked for the money, Jackson said he didn't owe the defendant $10, refused to give it to him, and an argument ensued; that the defendant went to his car and returned with a gun in his hand; that he again asked Jackson for the $10 and Jackson then dropped some money to the floor; and that after picking it up, the defendant then fired the gun, and Jackson fell near the wall. Then, according to the witness, the defendant struck

Jackson with the gun, causing it to fire a second time, and then went through Jackson's pockets and took the balance of the money. On cross-examination, the witness stated that Jackson had been drinking that day and had $160 in his pocket prior to the shooting, but had no money in his possession at the hospital, according to information given there.

The other occurrence witness, Julius Cannon, testified that only one shot was fired; that Jackson had something which appeared to be a wrench in his left hand when the defendant came in the doorway with the gun; that Jackson appeared to threaten the defendant with this instrument; that the defendant pushed Jackson before shooting him; and that after Jackson fell to the floor, the defendant left the building without touching him again.

A pathologist testified that the cause of Jackson's death was a bullet wound through the heart, and that, in addition, there was a two-inch laceration on the back of his neck. He further testified that the alcoholic content in Jackson's blood indicated that he was moderately intoxicated at the time of his death.

Detective James Griffin testified that, without resistance, he arrested the defendant near his home and made an immediate search of his automobile, including the trunk, where a .22 caliber revolver was found, and that he believed all of the parties and witnesses to the dice game had been drinking.

The defendant testified on his own behalf and stated that he had obtained the gun as security from someone who owed him money; that he carried the gun with intent to return it and recover the money; that Jackson repeatedly refused to return $10 of the defendant's money which he had picked up, and told the defendant that the only thing he was going to get was a killing; that when the defendant started for the door, Jackson came at him with a wrench, and in order to ward off the blow, he pulled the gun out of his pocket, hit Jackson's hand and thus caused

the gun to discharge; that the shooting was not intentional; and that he did not strike Jackson on the back of the head with the gun and did not take his money. He also stated that from the time of the shooting until his arrest, he made no attempt to leave the city of Chicago, and on cross-examination he denied that he went home and packed his luggage.

Detective Griffin, when called in rebuttal by the State, testified over objection by the defendant, that when he searched the defendant's car at the time of the arrest, several pieces of packed luggage were found in the trunk of the car. The defendant then made a request for a hearing on a motion to suppress this evidence, which was denied.

At the conference on instructions, the State tendered both a murder and voluntary manslaughter instruction, and the latter was given by the court over objection by the defendant.

The defendant raises five points in this appeal: that the submission of a voluntary manslaughter verdict to the jury at the conclusion of the case, absent a manslaughter count in the indictment, deprived him of his constitutional right to notice of the charges against him; that certain comments of the trial court deprived him of a fair trial; that the court erred in denying him a hearing on the question of the legality of the search of his car; that he was prejudiced by a misleading argument of the prosecutor; and that the evidence sustained neither the giving of a manslaughter instruction nor the conviction.

The identical question of whether a person indicted only for murder may, absent a specific manslaughter charge in the indictment, be convicted of manslaughter, was raised in *People v. Lewis (1941), 375 Ill. 330.* In that case, it was argued that the two offenses differ essentially in that murder requires proof of malice, whereas manslaughter does not, and that, therefore, the defendant was convicted of an offense with which he was not charged, in violation of due process of the law under the State and

Federal constitutions. In rejecting the argument, this court at page 335 stated: "Since it is the general rule that an indictment for murder involves all other grades of homicide which the evidence tends to establish, an indictment charging murder includes therein a charge of manslaughter. [Citations.] Consistently with this reasoning we have expressly held that the crime of manslaughter is embraced in a charge of murder, and the accused may be found not guilty of murder and convicted of manslaughter. [Citations.] Since the indictment must be held to charge manslaughter, plaintiff in error was thereby advised of the charge, and he has no ground to complain that his rights under the due process clause of the State or Federal constitutions have been invaded." Also see: *People v. Korycki (1970), 45 Ill.2d 87.* Therefore, we find no merit in this contention.

The next contention is that the trial court, after overruling an objection of counsel for the defendant, made the following prejudicial remark to counsel: "You don't need to coach from your table." This comment was made during the stress of the trial and may have lacked the circumspection which should characterize the statements of the trial court. However, it did not constitute reversible error.

The defendant's claim that he was improperly denied a hearing on his motion to suppress evidence during rebuttal is likewise not well taken. He failed to object when the search of the trunk of his car was first mentioned in the State's case in chief. In addition, the rebuttal testimony was corroborative of the State's case in chief and was offered to contradict and impeach the testimony of the defendant. It was competent rebuttal evidence and it was properly received for impeachment purposes. *(People v. Bell (1928), 328 Ill. 446, 451-452.)* The State here did no more than utilize the truth-testing procedures of the adversary process, and the belated motion to suppress was properly denied.

In *Walder v. United States (1954), 347 U.S. 62, 98 L.Ed 503, 74 S.Ct. 354,* there was a factual situation somewhat similar to that in the case at bar. Even though the rebuttal testimony of the police officer concerned evidence which had been illegally seized and suppressed, the United States Supreme Court at page 65 found that there was no fourth-amendment violation, and stated: "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment." (347 U.S. 62, 65.) Also see: *People v. Pelegri (1968), 39 Ill.2d 568, 575-577.*

The defendant next urges that the prosecutor's closing argument to the jury was misleading and deprived him of a fair trial. The prosecutor said: "Did the defendant get on the stand and say this was self-defense, I was protecting my life? This man was beating me bloody with a wrench in his hand? Absolutely not." The defendant objects to this comment because it seems to imply that the defendant had to be wounded, or blood drawn, before he had the right to kill in self-defense.

We acknowledge that a person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the other person's use of unlawful force, and that it is not necessary that blood be first drawn before the right of self-defense arises. However, we do not construe the prosecutor's remarks as misleading or reversible error, but in fact find them to be proper comment on testimony validly introduced during the trial. *People v. Anderson (1971), 48 Ill.2d 488, 497-498; People v. Ostrand (1966), 35 Ill.2d 520, 531.*

The defendant finally argues that the evidence sustain-

ed neither the giving of a manslaughter instruction nor the conviction. We disagree. Under the circumstances of this case, the defendant can be found guilty of the lesser included offense by a jury if the evidence supports such a finding.

There was sufficient evidence at the trial from which the jury could deduce that the defendant believed the circumstances to be such as, if they existed, would justify the killing under the principles of self-defense, but his belief was unreasonable. All witnesses agreed that the defendant left the dice game and went to his car just prior to the shooting, and one witness testified that when he returned Jackson appeared to threaten him with a wrench. We observed in *People v. Jordan (1960), 18 Ill.2d 489,* at page 493: "However, when the evidence is conflicting it is the function of the jury to resolve the conflict and determine the credibility of the various witnesses. *(People v. Sudduth, 14 Ill.2d 605.)* We will not disturb the jury's finding that the defendant did not act in self-defense." Here also, we will not disturb the jury's finding.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*