THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TOMMIE WHITE, Defendant-Appellant.

First District (3rd Division)   No. 79-18

Opinion filed August 6, 1980.

James J. Doherty, Public Defender, of Chicago (Emily Eisner and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Jeremiah W. Lynch, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE RIZZI delivered the opinion of the court:

In a bench trial, defendant, Tommie White, was found guilty of voluntary manslaughter (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b)), and he was sentenced to a five-year term. He contends the State did not prove beyond a reasonable doubt that he was not acting in self-defense. We reverse.

Defendant lived in a third floor apartment in Chicago. The victim, Glisper Brown, resided in the building next door. The evidence shows there was a history of animosity between them. On the night of February 24, 1975, defendant and Brown were at a neighborhood tavern. Brown became angered when defendant's gun accidentally discharged, causing tile fragments to strike his leg. Defendant and his wife were told to leave the tavern. Later that evening Brown went to defendant's apartment building. According to statements made by defendant before trial, Brown approached defendant's apartment brandishing a knife and swearing and making threats. Brown was admonished to go home, but he continued to approach. Defendant fired one shot, killing Brown.

Tyrone Holt, a friend of Brown, testified that he was with Brown on the night of February 24. After the shooting in the tavern, they went to Brown's apartment. Later, Brown left the apartment to retrieve some cigarettes which Holt had left in the car. Shortly thereafter, Holt heard a gunshot. Someone yelled that Brown was injured, so he ran downstairs and saw Brown lying on the first flight of stairs in the next entryway.

Brown's brother-in-law, William Morton, lived directly beneath defendant in the second floor apartment. He testified that on the night in question, he saw and heard Brown "arguing upstairs" with defendant about the tavern incident. He also heard defendant and his wife tell Brown to go home, that the shooting was accidental. As Morton was closing his door, he heard a shot. Brown stumbled and collapsed in the middle of the first flight of stairs.

■■ Defendant contends that the State did not prove beyond a reasonable doubt that he was not acting in self-defense. In order to justify a killing on the basis of self-defense, a defendant must have been acting pursuant to a reasonable belief that the use of force which was intended or likely to

cause death or great bodily harm was necessary to prevent imminent death or great bodily harm to himself. (Ill. Rev. Stat. 1975, ch. 38, par. 7—1.) If a defendant has a reasonable belief that he is in imminent danger of loss of life or great bodily harm, he may use deadly force to protect himself even though he is mistaken as to the danger and the danger is only apparent. (*People v. Kelly* (1975), 24 Ill. App. 3d 1018, 1026, 322 N.E.2d 527, 534; *People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 377, 240 N.E.2d 150, 154.) The test is what the defendant, as a reasonable man, believed under the circumstances. *People v. Lenzi* (1976), 41 Ill. App. 3d 825, 835, 355 N.E.2d 153, 162.

In the present case, the evidence is uncontroverted that Brown had cut defendant with a knife some months earlier because Brown mistakenly believed that defendant was responsible for damage to his car. On the night of the occurrence, Brown was clearly angered by the accidental shooting in the tavern which occurred just a few hours prior to his death. Brown had to be persuaded not to follow defendant and his wife out of the tavern. Later Brown went to defendant's apartment building and went up the stairs toward defendant's apartment. Morton testified that he heard Brown argue with defendant about the tavern incident. Morton also testified that he heard defendant and his wife tell Brown to go home. According to defendant, Brown was brandishing a knife and threatening his life.

When one is threatened by a person who carried out his threats on a previous occasion, he does not have much time to reason out his response or judge precisely how much force is necessary to repel the threatened attack. While it is true he cannot take the law into his own hands, we must bear in mind that a person placed in such a position is not in a contest governed by established rules enforced by an on-the-scene umpire. (*Lenzi*, 41 Ill. App. 3d 825, 835, 355 N.E.2d 153, 162.) Consequently, the law does not charge a person, when he has reasonable grounds to believe himself in apparent danger of losing his life or suffering great bodily injury, to use inerrable judgment. It would be unreasonable to require such an exacting decision to be made in the space of a few seconds while one is fearful and under great stress. See *People v. Motuzas* (1933), 352 Ill. 340, 346, 185 N.E. 614, 617.

The question in a case such as this is whether on the basis of quickly unfolding events the defendant's response was reasonable under the exigencies that existed at the moment. In this regard, the right of self-defense arises before the first blood is drawn. (*People v. Speed* (1972), 52 Ill. 2d 141, 146, 284 N.E.2d 636, 639.) Merely because the police did not find a knife at the scene when they arrived does not establish beyond a reasonable doubt that defendant's fear of great bodily harm and his response were unreasonable. It merely raises an issue as to whether Brown

actually had a knife. But it is not necessary for the deceased to have actually possessed or used a deadly weapon to justify a killing in self-defense. (*Brumbeloe*, 97 Ill. App. 2d 370, 377, 240 N.E.2d 150, 154.) If a person is confronted with such means or force as to induce a reasonable belief that he is in danger of loss of life or of suffering great bodily harm, that is all the law requires to justify a killing as self-defense. (*Motuzas*, 352 Ill. 340, 346, 185 N.E. 614, 617.) Here, the evidence is virtually uncontroverted that Brown had previously cut the defendant and that his threats and aggressive conduct were real at the time of the occurrence. Thus, under the circumstances, it cannot be said that defendant's belief that he was in danger of death or great bodily harm was unreasonable beyond a reasonable doubt. See *Brumbeloe*, 97 Ill. App. 2d 370, 376-77, 240 N.E.2d 150, 154.

■■ After carefully considering all the evidence and circumstances, we conclude that the State did not prove beyond a reasonable doubt that defendant was not acting in self-defense when he shot Brown. Accordingly, the defendant's conviction must be reversed.

Reversed.

McGILLICUDDY, P. J., and SIMON, J., concur.