THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RON-
ALD PARKER, Defendant-Appellee.

First District (3rd Division) No. 1—90—1239

Opinion filed March 30, 1994.

Michael J. Pelletier and Barbara Kamm, both of State Appellate
Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica
X. Calderon, and Mary Killough, Assistant State's Attorneys, of counsel), for
the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, Ronald Parker was found guilty of first degree murder in the stabbing death of his son, Julius Nate Parker. Thereafter, Parker was sentenced to 25 years' imprisonment.

Ronald and his wife Alice lived together with their six children in a Chicago Housing Authority (CHA) building at 4022 South State Street. Ronald Parker testified that his relationship with Julius was strained because of his son's involvement in the drug trade. According to Ronald, his son began selling drugs in July of 1988. He also stated that Julius, along with his close friend Ledell Murphy, was selling drugs almost every day in the building where the Parkers resided. Ronald was upset because of the effect of the drug trade on the younger children in the household. Apparently, Julius' mother, Alice, approved of her son's drug use and she acknowledged that her two sons, Ronny and Julius, would argue over drugs.

Sheila Weeks testified that she had been the girl friend of Julius for approximately 1½ years at the time of his death. She, as well as Alice and Ronald Parker, and Ledell Murphy testified that Julius carried a beeper. Officer William Winters testified that beepers are often used in drug sales.

On March 14, 1989, at 5:45 a.m., Ronald testified that he went to search the apartment of Jessica, a former girl friend of Julius. Both Ronald and Jessica's father searched the apartment and found drugs, including cocaine. After fighting with Jessica's father about the cocaine, Ronald fled the apartment and ran down the street, knocking on the window of a grocery store for help. The owner came to the window with a pistol. Julius, Ledell Murphy and his brother came out of the building, chasing Ronald with guns.

After Julius and his friends fired at Ronald, he called 911 and was taken to the hospital since one of the bullets had nicked him. Shortly thereafter, Ronald saw his son arrested at the raid of a dope house. On the morning of March 18, Julius returned home and accused Ronald of steeling his beeper. Ledell Murphy and his brother then came into the apartment and threatened Ronald with bodily harm if he did not give up the beeper. Both had guns in their pockets. Ronald was told that he better give up the beeper or they would do some bodily harm to him. Ronald swiftly exited the apartment and went to a nearby public phone to call 911. Ronald inquired as to why his son had been released after he had pressed charges against his son for the prior shooting. He then said his son had shot at him and he wanted a squad car.

Ronald testified that his son, along with the Murphy brothers, then approached him in the middle of the street and asked about his

beeper. Julius tried to search Ronald but Ronald shoved him away. After repeating this several times, Julius put his hand in his pocket and retrieved a pistol. Ronald then pulled out a knife and stabbed Julius "because his [Ronald's] life was at stake."

When he saw Julius run to a nearby parking lot, he did not believe he had wounded him seriously. Ronald testified: "I know I had the knife in my hand, but I never felt it touch him." He then called 911 and also requested an ambulance. As crowds began to gather, Ronald became scared and started running. He noticed that he too needed an ambulance because his hand was "twisted." This occurred when Ronald grabbed the gun in an effort to prevent Julius from firing. The ring finger and part of the back of the hand were later found to be fractured. Ronald was eventually taken into custody by two Chicago police detectives. He told them his son had pulled a gun on him and that he stabbed him.

Sheila Weeks testified that Julius collapsed in the nearby parking lot. When she ran over to him he was gasping for breath. She did not find any gun on Julius. She later saw Ronald standing in the grass with a knife in his hand. The Cook County medical examiner diagnosed the cause of death as a four-inch-deep stab wound in the abdomen which penetrated the heart.

On appeal we first consider whether or not the State proved defendant guilty of first degree murder beyond a reasonable doubt. A criminal conviction will not be set aside unless the evidence is so improbable that it creates a reasonable doubt of defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In order to reverse, we must find that after viewing the evidence in a light most favorable to the prosecution no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.

Pursuant to the first degree murder statute in Illinois, the State must prove beyond a reasonable doubt that defendant intentionally killed without lawful justification (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(1)) or intentionally committed acts knowing that the acts created a strong probability of death or great bodily harm (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(2)).

When presented with a challenge to the sufficiency of the evidence, it is the reviewing court's function to carefully examine the evidence, giving due consideration to the fact that the court and the jury saw and heard the witnesses. (*Young*, 128 Ill. 2d at 48; *People v. Hood* (1992), 229 Ill. App. 3d 202, 210, 593 N.E.2d 805.) If, after such consideration, the reviewing court is of the opinion that the evidence is not sufficient to remove all reasonable doubt of the defendant's

guilt and is not sufficient to create an abiding conviction that he is guilty of the crime charged, then the conviction must be reversed. See *Young*, 128 Ill. 2d at 48.

The strongest testimony presented by the State was the eyewitness testimony of Sheila Weeks, girl friend of the victim, and Ledell Murphy, supposedly his partner in the drug trade. The defense posits that both of these people were interested witnesses and biased against Ronald, who was making an effort to stop his son's drug trade. Weeks testified that the victim was unemployed and yet he always "had plenty of money," some of which he gave to her. The victim's mother testified that he was most likely dealing drugs. Ronald also testified that Ledell Murphy was a partner with his son in the drug business. Since Ronald tried to interrupt this business, both Weeks and Murphy would share animosity toward Ronald.

The State claims there exists no proof of the prior shooting attack on Ronald by his son and his friend Murphy. However, the defense states that this attack was never refuted by the State. Moreover, Murphy, a State witness, was never questioned about the attack. The defense argues that the attack on Ronald several days prior would justify his fear for his own life when Julius began demanding the beeper and, thereafter, provoked a fight.

In *People v. Ellis* (1982), 107 Ill. App. 3d 603, 437 N.E.2d 409, Ellis was charged with murder, voluntary manslaughter and involuntary manslaughter. Following a jury trial, Ellis was found guilty of murder. At the time of the shooting, the victim had been drinking all day and he began to charge at the defendant when defendant shot at him. The court concluded there was insufficient evidence to prove the requisite intent necessary for murder. The defendant's version of the shooting was not improbable nor was it impeached by the State's witnesses. Thus, the conviction for murder was reduced to voluntary manslaughter. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b).) However, the court further held that defendant had no reasonable belief that the victim possessed a weapon which would cause him great bodily harm.

Likewise, in the instant case, the testimony of Ronald as to the argument and wrestling with his son and the belief that his son possessed a gun and was a drug dealer are all believable facts which were not contradicted by the State's witnesses. Although no weapon was later found on the victim's body, this does not discount the possibility of the victim's tossing the gun or one of his friends taking the gun during the lengthy interval when the victim lay in a parking lot awaiting an ambulance. As in *Ellis*, Ronald did not really believe he had wounded his son and he did seek help immediately following the incident.

■ Pursuant to Supreme Court Rule 615(b)(3)(73 Ill. 2d R. 615(b)(3)), this court, if appropriate, may reduce the degree of the offense for which defendant was convicted from murder to voluntary manslaughter. (*People v. Hudson* (1979), 71 Ill. App. 3d 504, 390 N.E.2d 5; *People v. Goolsby* (1977), 45 Ill. App. 3d 441, 359 N.E.2d 871.) Voluntary manslaughter is a lesser included offense of the charge of murder. (*People v. Pierce* (1972), 52 Ill. 2d 7, 11, 284 N.E.2d 279.) Moreover, it represents a legal compromise between murder and exoneration. *People v. Monigan* (1981), 97 Ill. App. 3d 885, 889, 423 N.E.2d 546.

In addition to the lack of evidence of murderous intent necessary for a murder conviction, there is also the issue of whether Ronald was acting under the reasonable belief that his life was in danger. In *People v. White* (1980), 87 Ill. App. 3d 321, 409 N.E.2d 73, defendant was threatened by a friend brandishing a knife and threatening his life. Following a bench trial, defendant was found guilty of voluntary manslaughter. On review, the appellate court reversed, finding:

"When one is threatened by a person who carried out his threats on a previous occasion, he does not have much time to reason out his response or judge precisely how much force is necessary to repel the threatened attack. *** Consequently, the law does not charge a person, when he has reasonable grounds to believe himself in apparent danger of losing his life or suffering great bodily injury, to use inerrable judgment. It would be unreasonable to require such an exacting decision to be made in the space of a few seconds while one is fearful and under great stress." *People v. White*, 87 Ill. App. 3d at 323, 409 N.E.2d at 75, citing *People v. Lenzi* (1976), 41 Ill. App. 3d 825, 835, 355 N.E.2d 153, 162, and *People v. Motuzas* (1933), 352 Ill. 340, 346, 185 N.E. 614, 617.

■ While the evidence in this case is closely balanced, based upon the foregoing facts and case law, we find that the State produced enough evidence at trial for the trier of fact to find defendant guilty beyond a reasonable doubt of first degree murder. Although the trial court erred in failing to give a jury instruction on provocation, as will be discussed *infra,* we are considering the sufficiency of the evidence supporting first degree murder in order to protect the defendant against double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309-10, 391 N.E.2d 366, 375.

The next issue we address deals with the jury instructions on self-defense and provocation. The following jury instruction on self-defense was read to the jury:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." Illinois Pattern Jury Instructions, Criminal, No. 24—25.06 (2d ed. 1981).

The other instruction, on mitigating circumstances, read:

"A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if at the time of the killing the defendant believes that circumstances exist which would justify the deadly force he uses, but his belief that such circumstances exist is unreasonable." Illinois Pattern Jury Instructions, Criminal, No. 7.05a (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d).

The defense argues that the above instructions were insufficient since counsel failed to tender an instruction on second degree murder based upon the mitigating mental state of sudden and intense passion caused by provocation during the struggle. It is well settled that mutual combat provides adequate provocation for the mitigating mental state of acting under sudden and intense passion. See *People v. Austin* (1989), 133 Ill. 2d 118, 549 N.E.2d 331; *People v. Healy* (1988), 168 Ill. App. 3d 349, 522 N.E.2d 749.

In the recent first district case of *People v. Howard* (1992), 232 Ill. App. 3d 386, 597 N.E.2d 703, the defendant was drunk and fighting when he began waiving a knife at the victim. Defense counsel tendered an IPI jury instruction for involuntary manslaughter. The instruction stated that an instructional definition of "recklessness" was also to be given in conjunction with the involuntary manslaughter instruction. This definition was never given. Defendant was convicted of murder and sentenced to 30 years' imprisonment.

On appeal, the appellate court reversed, finding that the failure of giving the recklessness definition and the closely balanced evidence warranted a reversal for a new trial. The court reasoned that because the jury, without having the definition, may have thought recklessness meant ordinary negligence, they chose murder, the only available alternative.

In this case the central issue was whether or not defendant was acting in a sudden heat of passion or whether he intended to murder his son. The applicable section of the jury instruction on provocation reads:

"To sustain the charge of murder instead of involuntary manslaughter, the State must prove beyond a reasonable doubt the following additional proposition: that the defendant, at the time he performed the acts which caused the death of _____,

did not act under a sudden and intense passion resulting from serious provocation by [(_____) (some other person he endeavors to kill, but he negligently or accidently kills _____)]." IPI Criminal 2d No. 7.02B (Supp. 1989).

In the case of *People v. Bolden* (1968), 103 Ill. App. 2d 377, 243 N.E.2d 687, the defendant and victim were fencing with knives. The only issue was whether the stabbing was murder or involuntary manslaughter. The court reversed on appeal because the definition of involuntary manslaughter read to the jury omitted that "the act must be performed recklessly."

■ In the instant case, we are dealing with much more than just the definition of the act of voluntary manslaughter. We are dealing with the omission of a question of fact to be decided by the jury, that is, whether or not defendant was acting under the mitigating mental state of sudden and intense passion due to serious provocation. As in these other cases, this is a very closely balanced set of facts. The facts leading up to the day of stabbing suggest that Ronald was acting under a cloud of fear, which began after he took the cocaine, belonging to his son, but apparently in an effort to stop the son's drug trade and protect the younger children in the family. He then compounded the problem by apparently taking his son's beeper which was used in the drug trade. Just before the stabbing, the two were engaged in a heated argument in the street which lead to a shoving match. According to Ronald, Julius then pulled a gun and there was a struggle to get the gun away from Julius. This is when the stabbing occurred.

Although the gun was not recovered, more than an hour passed between the incident and the removal of Julius' body by an ambulance. Ronald ran to a telephone and tried to get help. The only other State witnesses, Sheila Weeks and Ledell Murphy, were close friends of Julius. Ledell Murphy was involved in Julius' drug business. Sheila Weeks was the girl friend of Julius and she testified about how he had a lot of money, which he also spent on her.

Based upon the facts of this case, we cannot find the failure of counsel to give the jury instruction on provocation to be harmless error. We conclude that defense counsel's performance deviated from an objective standard of reasonableness and that the defendant was substantially prejudiced by the alleged error, such that the verdict would have been different.

■ The next issue raised concerns certain remarks made by the prosecutor during closing argument. Defendant failed to object to the allegedly improper arguments during the State's opening and rebuttal closing arguments. In order to preserve an issue on appeal,

both a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Defense counsel's objections are therefore waived and will not be considered on review.

■ Finally, defense counsel argues that the statutory murder scheme in Illinois is unconstitutional. This issue has been decided by the United States Supreme Court in *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319. In *Patterson,* the Court upheld the constitutionality of a New York statute which, like the Illinois murder statute, required defendant to prove by a preponderance of the evidence the existence of a mitigating factor, reducing the crime of murder to that of manslaughter. Moreover, the issue of whether section 9—2 violates a defendant's constitutional right to due process was already settled in *People v. Gore* (1991), 212 Ill. App. 3d 984, 571 N.E.2d 1041, wherein the court found there was no violation of the due process clause.

For all of the foregoing reasons, the decision of the Cook County circuit court is hereby reversed and remanded for a new trial.

Reversed and remanded.

RIZZI and CERDA, JJ., concur.