2021 IL App (1st) 182569-U

No. 1-18-2569

Order filed December 13, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 1210 |
| | ) | |
| BRYANT JAMES, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WALKER delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for second degree murder is affirmed over his contention that the State did not prove beyond a reasonable doubt that his actions were not justified as self-defense. His sentence is affirmed over his contention that it is excessive, fails to reflect his rehabilitative potential, and is contrary to the public good.

¶ 2    Following a bench trial, defendant Bryant James was convicted of second degree murder (720 ILCS 5/9-2(a)(2) (West 2016)) and sentenced to 14 years in prison for the shooting death of Cory Foster. On appeal, Bryant challenges the sufficiency of the evidence, arguing that the State

did not prove beyond a reasonable doubt that his actions were not justified as self-defense. He also contends that his sentence is excessive, fails to reflect his rehabilitative potential, and is contrary to the public good. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Kierrha Saffold came home well after midnight on December 13, 2016.  She had moved into Brandon James's apartment at the end of November 2016.  Brandon confronted Saffold and told her to move out immediately.  Saffold called her former boyfriend, Cory Foster, and asked him to help her move.  Brandon called his brother Bryant to come over.  After Saffold made several trips carrying her possessions to her car, Bryant and Foster arrived sometime after 3 a.m. on December 13.  Bryant fired two bullets into Foster's chest and drove away.  Prosecutors charged Bryant with first degree murder.

¶ 5     At the bench trial, the witnesses provided the background for the confrontation.  Bryant carried a gun because of an unrelated attack in 2015 that left him in a coma for several weeks. Saffold started dating Brandon after breaking off her relationship with Foster, but Foster continued to pursue her.  In September 2016, Brandon visited Saffold at her family's home.  Foster sent to Saffold's phone photographs of Brandon's car where he parked it outside her family's home. Saffold showed the photograph to Brandon.  Brandon called Bryant, who came over to make sure Foster had not taken Brandon's gun out of Brandon's unlocked car.  Bryant called Brandon from outside Saffold's home to tell him he found the gun and saw no problems.  When Brandon and Saffold went out to greet Bryant, Foster drove up and stopped his car inches from Brandon's leg. Foster told Saffold to come with him, but Saffold refused, and Foster left when Bryant told him to leave.

¶ 6 The witnesses gave conflicting accounts of the confrontation between Bryant and Foster on December 13, 2016. Brandon testified that from inside the apartment building, he saw Foster move towards Bryant and he saw Bryant back away before Brandon heard two shots fired. Brandon's upstairs neighbors testified that they awoke at the sound of a door slamming, then they heard two gunshots and Saffold saying, "Cory, don't die," and "why did you have to do this." One of the neighbors heard a male voice saying, "now look what happened," in a tone the neighbor described as taunting.

¶ 7 Saffold testified that Foster wore a ski mask when he and Bryant had words outside. She stood between them "to stop it from happening." She told Bryant that he did not need to shoot Foster because she was moving out. She was still between them when Bryant fired the first shot. Foster pushed Saffold out of the way and charged at Bryant, then Bryant fired a second shot. Saffold pulled off Foster's ski mask and yelled for help. After the shooting incident, she reconciled with Brandon, and at the time of trial she was pregnant with Brandon's child.

¶ 8 Bryant testified that when he arrived at Brandon's apartment building, a man he did not recognize, wearing a ski mask, walked up. Bryant asked, "who are you looking for?" The man did not answer. Instead, he charged at Bryant. The silent masked man reached for Bryant's gun, but Bryant reached it first and fired. Bryant testified that Saffold did not come between him and Foster, and she did not tell him the masked man was Foster. He knew he shot Foster only after Saffold pulled off his mask. Bryant said, "Look what happened now." Bryant drove away because Brandon told him to leave.

¶ 9 Gunshot residue tests showed that Saffold and Foster stood within 10 feet of the gun when Bryant fired it.

¶ 10    The trial court found Bryant knew before he fired the gun that the man outside Brandon's home was Foster. The court found Bryant guilty of second degree murder and stated:

¶ 11    "[Bryant] became involved in a verbal altercation with Mr. Foster. I think Mr. Foster made a grab for him and that he fired two shots, and that at the time he acted, he believed he was acting in self-defense.

¶ 12    However, his belief was unreasonable."

¶ 13    Bryant had two prior convictions, one for misdemeanor battery, and one for unlawful use of a weapon. He had not previously served time in prison. His friends and family wrote to the court letters asking for lenience. He completed high school and had taken classes at Triton College. The judge sentenced Bryant to 14 years in prison. Bryant now appeals.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, Bryant first challenges the sufficiency of the evidence to convict, and he argues the court imposed an excessive sentence. When reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). We will not reverse the conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 16    Bryant argues that the State did not prove beyond a reasonable doubt that his actions were not justified by self-defense. He notes that the trial court did not explain why it determined his belief in the need to act in self-defense was unreasonable. Bryant argues that his belief was

reasonable where Foster displayed aggressive behavior toward him long before the shooting, Brandon warned him "to expect the presence of hostile individuals" when he arrived at the apartment building, and the warning was substantiated when Bryant saw a man in a ski mask approach him with his hands in his jacket pockets. Bryant asserts that the wearing of a ski mask "signals to a reasonable onlooker an intent to be intimidating, to be anonymous, and potentially to commit violence without being identified."

¶ 17      In this case, Bryant was charged with first degree murder. First degree murder occurs when an offender kills another individual without lawful justification and either (1) intends to kill or do great bodily harm to that individual or another or knows that such acts will cause death, (2) knows that such acts create a strong probability of death or great bodily harm to that individual or another, or (3) is attempting or committing a forcible felony other than second degree murder. 720 ILCS 5/9-1(a) (West 2016).

¶ 18      One recognized lawful justification to first degree murder is the affirmative defense of self-defense. *People v. Jeffries*, 164 Ill. 2d 104, 127 (1995). In order to raise self-defense, a defendant must provide some evidence that (1) unlawful force, which is intended or likely to cause death or great bodily harm, was threatened against a person; (2) the person threatened was not the aggressor; (3) the danger of harm was imminent; (4) the use of force was necessary; (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable. 720 ILCS 5/7-1 (West 2016); *People v. Lee*, 213 Ill. 2d 218, 225 (2004). If the defendant meets this burden, the burden of proof shifts back to the State to prove beyond a reasonable doubt that the defendant did not act in self-

defense. *Lee*, 213 Ill. 2d at 224. The State carries this burden if it negates any one of the elements of self-defense beyond a reasonable doubt. *Id.* At 225.

¶ 19    If the defendant's claim of self-defense fails, the trier of fact must then find the defendant guilty of either first or second degree murder. *Jeffries*, 164 Ill. 2d at 128. Second degree murder occurs when an individual commits first degree murder, but a mitigating factor is present. See *People v. Thompson*, 354 Ill. App. 3d 579, 585, 587 (2004); see also 720 ILCS 5/9-2 (West 2016). The mitigating factor relevant in the instant case is if "at the time of the killing [the defendant] believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the [self-defense] principles stated in Article 7 of this Code, but his or her belief is unreasonable." 720 ILCS 5/9-2 (a)(2) (West 2016).

¶ 20    The issue presented in this appeal is whether the State proved beyond a reasonable doubt that the actions taken by Bryant were not justified because Bryant's belief in the need to act in self-defense was unreasonable. "The reasonableness of an individual's belief that the use of deadly force was necessary depends on the surrounding facts and circumstances and is a question of fact." *People v. Hawkins*, 296 Ill. App. 3d 830, 836 (1998). The use and amount of force exercised must be necessary to avert the danger. *Id.* At 836-37. The trier of fact is not required to accept as true the defendant's testimony regarding the incident and the need for self-defense. *People v. Murillo*, 225 Ill. App. 3d 286, 292 (1992). Instead, the trier of fact must consider the probability or improbability of the testimony, the surrounding circumstances, and the testimony of other witnesses. *In re Jessica M.*, 399 Ill. App. 3d 730, 737 (2010). A trial court's determination regarding whether the defendant unreasonably believed that his use of force was necessary will not be disturbed on appeal if, viewing the evidence in the light most favorable to the prosecution,

any rational trier of fact could have reached that determination. *People v. Reid*, 179 Ill. 2d 297, 308 (1997).

¶ 21 Here, the trial court found Bryant believed he needed to shoot to defend himself. We address only the issue of whether the evidence supports a finding that Bryant's belief in the need to shoot in self-defense was unreasonable.

¶ 22 Saffold's testimony supports the court's finding that Bryant recognized Foster at the confrontation outside Brandon's apartment. In their previous confrontation, in September 2016, Foster showed hostility, and he used his car in a somewhat threatening manner, but he left when Saffold refused to go with him and Bryant told him to leave. Foster did not carry a firearm in either the September or the December encounter.

¶ 23 Bryant asks us to compare this case to *People v. White*, 87 Ill. App. 3d 321 (1980). In that case, the victim had made multiple threats against the defendant, and he had cut the defendant with a knife. The appellate court stated:

> "When one is threatened by a person who carried out his threats on a previous occasion, he does not have much time to reason out his response or judge precisely how much force is necessary to repel the threatened attack. *** [T]he law does not charge a person, when he has reasonable grounds to believe himself in apparent danger of losing his life or suffering great bodily injury, to use inerrable judgment."
> *White*, 87 Ill. App. 3d at 323.

¶ 24 The circumstances here differ significantly from the circumstances in *White*. Foster had not previously threatened or injured Bryant, and Bryant did not face any "apparent danger of losing his life or suffering great bodily injury." *Id.*

¶ 25     We find this case more like *People v. Ellis*, 107 Ill. App. 3d 603 (1982).  In that case, Ellis's neighbors heard a fight and then shots fired in Ellis's apartment.  Ellis went to the neighbors to ask them to help save the life of the victim, Miller.  Ellis had invited Miller to stay in his apartment for a few days, but after four days Miller refused to leave.  Ellis took out a revolver and fired a shot into the wall to persuade Miller to go, but Miller said guns did not scare him and he lunged at Ellis.  Ellis shot Miller.  The appellate court held:

> "Since the evidence presented by both the State and the defendant established that the decedent made a 'lunge' at defendant, defendant was entitled to use of some force to repel the attack. *** However, force which is likely to cause death or great bodily harm is justified only upon a reasonable belief that it is necessary to prevent imminent death or great bodily harm. ***
>
> There is no indication in this record that defendant had any particular reason to believe the decedent possessed a weapon which could cause defendant great bodily harm or death, or to warrant the reasonable belief that decedent would kill him or cause him great bodily harm. *** The lunge made by the decedent toward the defendant who was holding a gun under the circumstances did not justify defendant's use of deadly force. 'A belief that the decedent, unarmed, might kill or greatly injure the defendant, while [he] had a loaded gun, was unreasonable.' (*People v. Davis*, 33 Ill. App. 3d 105, 110 (1975)). *** Accordingly, under the facts before us we find that the defendant could only properly be convicted of voluntary manslaughter." *Ellis*, 107 Ill. App. 3d at 611-12.

¶ 26    The General Assembly substituted the offense of second degree murder for the former offense of voluntary manslaughter, with essentially the same elements of the offense but different burdens of proof. See *People v. Reddick*, 123 Ill. 2d 184, 197 (1988).  Following *Ellis*, we find the evidence here sufficient to sustain the conviction for second degree murder.

¶ 27    Next, Bryant argues that because he had only two prior offenses for which he served no prison time, and he had a good education and strong supportive testimony from people who knew him well, the trial court should have imposed a sentence near the minimum for the offense.  Instead, the court sentenced him to a term in the upper half of the range for second degree murder.  See 730 ILCS 5-4.5-30(a) (West 2016).

¶ 28    Bryant also argues that his sentence is excessive in that it does not reflect certain statutory mitigating factors, fails to reflect his rehabilitative potential, and is contrary to the public good.

¶ 29    The two statutory mitigating factors that Bryant asserts were not given adequate consideration by the trial court are that he "acted under a strong provocation" and "[t]here were substantial grounds tending to excuse or justify the [his] criminal conduct, though failing to establish a defense." 730 ILCS 5/5-5-3.1(a)(3), (4) (West 2016). Bryant also notes that another statutory mitigating factor is that his imprisonment "would entail excessive hardship to his dependents." 730 ILCS 5/5-5-3.1(a)(11) (West 2016). He argues that his sentence deprives his four children of their father, "which creates a cascade of negative and lasting consequences." Regarding his rehabilitative potential, he argues that it is bolstered by his family's support, which was demonstrated by the multiple letters from relatives presented at the sentencing hearing, and by his employment as a skilled forklift operator.

¶ 30 The record demonstrates that the trial court was aware of the mitigating factors that Bryant identified on appeal. The PSI report and Bryant's addendum to the report, both of which the trial court reviewed prior to imposing sentence, indicated that Bryant was a certified forklift operator and had a certificate in power motor machinery. Information regarding Bryant's relationships with his children and the impact his incarceration has had on them also was included in the PSI report and Bryant's addendum, as well as in the letters that defense counsel submitted at the sentencing hearing and read into the record. Defense counsel orally emphasized that Bryant believed his actions were justified under the circumstances and argued that a lenient sentence was warranted because Bryant acted under strong provocation, and his imprisonment would entail excessive hardship to his dependents. In announcing the sentence, the trial court specifically stated it had read the letters provided by the defense. Where mitigating factors are presented, we may presume that the trial court properly considered them. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19.

¶ 31 Bryant also points out that the excessive incarceration of African-American men has devastating consequences. "These consequences can include not only negative impacts on employment, but also health, debt, transportation, housing, and food security." *The Obama White House, Economic Perspectives on Incarceration and The Criminal Justice System*, at 66 (April 2016), https://obamawhitehouse.archives.gov/sites/whitehouse.gov/files/documents/CEA%2Bcriminal%2Bjustice%2Breport.pdf (last accessed Nov. 23, 2021). We are mindful of Bryant's assertion that his sentence does not serve the public good, as the mass incarceration of African-American men has caused devastating social, political, economic, and moral harm to the community and public. In support of this argument, Bryant has cited statistics and reports about the community harm caused by such mass incarceration.

¶ 32    The trial court weighed the factors in aggravation and mitigation. We agree with Bryant's observations concerning excessive incarceration of African-Americans, and we might have emphasized the potential for rehabilitation and put less emphasis on Bryant's prior offenses. However, "[a] reviewing court must not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently." *People v. Streit*, 142 Ill. 2d 13, 19.

¶ 33    A sentencing determination will not be disturbed absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). Sentences that fall within the permissible statutory range may be deemed to be the result of an abuse of discretion only where they are "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* At 210. The sentencing range for second degree murder is 4 to 20 years. 730 ILCS 5/5-4.5-30(a) (West 2016).  Given the facts and circumstances of this case, we find that the trial court did not abuse its discretion in sentencing Bryant to 14 years' imprisonment.

¶ 34                                III. CONCLUSION

¶ 35    A rational trier of fact could find that Bryant had no good reason to believe that Foster, unarmed, would likely kill or severely injure Bryant. Thus, the evidence supports the conviction for second degree murder. Considering the nature of this case, the interests of society, and the trial court's consideration of mitigating and aggravating factors, Bryant's sentence does not demonstrate great variance with the spirit and purpose of the law, and it is not disproportionate to the nature of the offense. Hence, we find no abuse of discretion. Accordingly, we affirm the judgment of the circuit court.

¶ 36    Affirmed.